# IN THE DISTRICT COURT OF THE UNITED STATES

## for the Western District of New York

OCTOBER 2016 GRAND JURY
(Impaneled 10/28/2016)

**THE UNITED STATES OF AMERICA**

**INDICTMENT**

*-vs-*

**G. STEVEN PIGEON**

**Violations:**
Title 18, United States Code, Sections
371, 666(a)(2), 1343, 1346, 1952 and 2
(8 Counts)

## GENERAL ALLEGATIONS

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

1.      The defendant, G. STEVEN PIGEON ("PIGEON"), was an attorney and a political consultant.  From 2002 to 2015, PIGEON was employed by or otherwise associated with the Buffalo, New York, office of the Law Firm A.  PIGEON resided in the Western District of New York ("WDNY").

2.      PIGEON owned or was otherwise affiliated with several limited liability companies, including Landen & Associates LLC, PAPI Holdings LLC, and GSDP LLC.

3.     Among other things, PIGEON's LLCs consulted for commercial clients on business and litigation pending before New York state and local government agencies and courts.

4.     Company A is a New York based, private managed care company providing services to healthcare providers and insurance companies.  Company A was a client of Landen & Associates LLC.

5.     Between July 2012 and June 2014, Company A paid Pigeon affiliated entities approximately $188,000.

6.     From 1994 to 2016, John A. Michalek ("Michalek") was a New York State Supreme Court Justice within New York State's Eighth Judicial District.  Michalek was assigned to handle matters in the Eighth Judicial District's Commercial Division in Buffalo, New York.  As a Supreme Court justice for the Eighth Judicial District, Michalek was an agent of the State of New York and had a fiduciary duty to act in the best interests of the State of New York and its citizens.  Michalek resided in the WDNY.

7.     Between June 2012 and June 2014, Company A was a party to a lawsuit pending before Michalek.

8.     Relative One is a member of Michalek's immediate family who was seeking summer and post-graduate employment in 2012 and 2013.

9.     Person A is a lawyer and an associate of PIGEON.  In 2012 and 2013, PIGEON sought to arrange professional opportunities for Person A for PIGEON's own benefit.

10.     In 2012, Person B was an associate of PIGEON and was an Atlanta based lobbyist who was the Southern Regional Director for 2012 Obama for America campaign.

11.     As a New York State Supreme Court Justice, Michalek was authorized to appoint individuals to serve as receivers pursuant to New York Civil Practice Law and Rules ("NYCPLR"), Section 6401, and Title 22, New York Codes, Rules and Regulations ("NYCRR"), Part 36.

12.     Pursuant to NYCRR Part 36, a receiver must be selected from a list of qualified applicants established by the chief administrator of the New York Supreme Court.  This rule applies unless a New York State Supreme Court justice determines that there is good cause to show why a receiver not on the approved list should be appointed.

13.     Compensation of a receiver is based on a percentage of the moneys received and disbursed by the receiver during the course of the receivership.

14.     During each of calendar years 2012 and 2013, the State of New York received more than $10,000 from the United States government under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of assistance.

## COUNT 1

### (Conspiracy)

### The Grand Jury Further Charges That:

1.     The General Allegations of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.


### The Conspiracy

2.     From in or about February 2012 through in or about April 2013, in the Western District of New York, and elsewhere, the defendant, G. STEVEN PIGEON ("PIGEON"), and John A. Michalek ("Michalek") did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree together and with others, known and unknown:

> a.  to corruptly give, offer, and agree to give, anything of value to any person, intending to influence and reward Michalek, a New York State Supreme Court Justice and agent of New York State, in connection with a business, transaction, and series of transactions of New York State involving $5,000 or more, that is, a New York State Supreme Court receivership and payments under the receivership, in the same year in which New York State received more than $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance,  in violation of Title18, United States Code, Section 666(a)(2);

> b.  for Michalek, an agent of New York State, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of New York State involving $5,000 or more, that is, a New York State Supreme Court receivership and payments under the receivership, in the same year in which New York State received more than $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in violation of Title18, United States Code, Section 666(a)(l)(B); and

c. to devise, and intend to devise, a scheme and artifice to defraud and deprive the citizens of New York State of their right to the honest services of Michalek, a New York State Supreme Court Justice, through bribery, and for the purpose of executing the scheme and artifice to defraud, to knowingly transmit, and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, and signals in violation of Title 18, United States Code, Sections 1343 and 1346.

## Purposes of the Conspiracy

3.     It was a purpose of the conspiracy for PIGEON to enrich himself by bribing Michalek.  Specifically, PIGEON agreed to provide things of value to Michalek, including employment for a member Michalek's immediate family, Relative One, in exchange for Michalek engaging, and agreeing to engage in, official acts to benefit PIGEON and his associates.

4.     It was a purpose of the conspiracy for Michalek to obtain things of value, including employment for Relative One, through PIGEON, in exchange for Michalek engaging in, and agreeing to engage in, official acts to benefit PIGEON and his associates.

## Manner and Means

5.     The conspiracy was carried out through the following manner and means, among others:

a. PIGEON offered, provided, and attempted to provide things of value to Michalek, including a job for Relative One, support for Michalek's application for appointment to the appellate division of the New York Supreme Court, and luxury box tickets to sporting events for Michalek and a member of Michalek's immediate family, Relative Two.

b. In exchange for things of value from PIGEON, Michalek took, and agreed to take, official action for PIGEON.  Michalek appointed an individual, Person A, chosen by PIGEON, to a New York State Supreme Court

receivership, even though Person A was not on the court-approved list of receivers. Michalek falsely certified that he needed the services of Person A and granted motions for multiple payments to Person A totaling approximately $39,000. PIGEON solicited additional official actions from Michalek, including favorable judicial decisions in a case pending before Michalek involving Company A.

c.  After PIGEON bribed Michalek to award the receivership and approve payments to Person A, PIGEON directed Person A to pay PIGEON $5,000.

d.  PIGEON and Michalek used email and in-person meetings to discuss the things of value that PIGEON provided and the official action that Michalek agreed to take, with both the things of value and official actions often discussed in the same email or meeting.

## Overt Acts

15.  In furtherance of the conspiracy, and to effect its objects and purposes, defendant PIGEON and others committed the following overt acts, among others, in the Western District of New York, and elsewhere.

16.  On February 7, 2012, at 10:00 a.m., Michalek emailed PIGEON the following:

*Dear Steve,*
*Per my request, for your consideration, attached is my son's resume.*
*Thank you again for your consideration.*
*John*

17.  Michalek immediately sent PIGEON another email, attaching an order that Michalek had recently issued in the case involving Company A:

*See Decision/PS counsel in today for expedited discovery schedule.*
*John*

18.  PIGEON responded at 10:41 a.m.:

*Got it will send to my contacts*

19. At 1:43 p.m., Michalek emailed PIGEON a copy of the expedited discovery order that he had just issued in the case involving Company A:

> *FYI*

20. On February 8, 2012, at 10:04 a.m, Michalek emailed PIGEON regarding employment for Relative One:

> *Steve..Thank you again so much for the help..I would hasten to add..since you may be asked..whether he as an App. in??Apparently its custom and practice in DC to get Apps for Summer Emp in by the previous Fall.. [Relative One] did put his Apps in for State..Naval Intel, NESA, ABC news etc.. John*

21. At 3:04 p.m., PIGEON forwarded the email to a lobbyist contact in D.C. and requested his assistance in arranging employment for Relative One:

> *[Person C] I need to try to get this kid interviewed around StAte for internship entry level*
> *Any ideas?*

22. On February 13, 2012, at 9:39 a.m., Michalek emailed PIGEON:

> *Steve...oops ..forgot to confirm..folks claim again..sometimes can't open attachments..from here..on [Company A] (think2)??Also oops..forgot to reask..if aware any contacts for [Relative One] to help on Obama Reelect Camp..?? John*

23. At 3:49 p.m. PIGEON responded:

> *Yes  I was able to open and I am forwarding to Obamapeople*
> *Thanks*

24. On March 2, 2012, at 10:40 a.m., Michalek emailed PIGEON regarding the case involving Company A:

> *Background:*

*The subpoena listed a return date of May 12, 2011; it stated that if it was not served on [Person D] at least 20 days before the return date, he had until the 21st day after service to comply. However, it was not served upon him until May 26 – therefore, his prior attorney wrote to plaintiffs to state that it was void and he would not comply.*

*[Person D] is a non-party who used to work for Plaintiff [Company A], according to counsel, "to assist … in obtaining financing and facilitate relationship with potential investors." However, plaintiff claims that he instead covertly worked with defendants to frustrate plaintiffs efforts to secure financing, and thus is in possession of documents related to defendants' action, obligations, and duties under the agreement.*

*The subpoena states essentially that the documents requested relate to Defendants' alleged breach of the guaranty agreement.*

*Defendants object to the subpoena, on the grounds that the discovery is unnecessary because the same documents may be available from parties in the action. That objection was filed in December, before you ordered an expedited discovery schedule in this action..*

*[Person D] filed a motion for a protective order, alleging that the subpoena is void, or in any event, fails to provide the necessary notice concerning the reasons for the subpoena; if you overlook those alleged defects, he asserts that the subpoena is over broad and cites a lot of inapplicable law from other departments.*

*In [Company A]'s replies, which I only received yesterday and did not get through, it appears that in the 3 months since the original motion was filed, [Person D] in fact complied with the subpoena in part. I am unsure what relief is sought, and want to listen to the arguments.*

25.     At 12:16 p.m., PIGEON responded, in pertinent part:

*This [Person D] is a bad actor*
*He absolutely took trade secrets from these guys and keeps company with executives that are [Company A] clients and competition. We believe he shared trade secrets and other confidential information and is hiding behind personal relationships in his claims of privileged information. We would like to see all communications with key executives of [Company A] clients and competitors. Finally, in relation to the date issue....shouldn't any technical issue with the date not controvert the fact that [Person D] was engaged and hired counsel and clearly understands the nature and scope of the subpoena? Thank you for keeping me in the loop. I will speak to you soon.*

26.     On March 16, 2012, at 11:25 a.m., Michalek emailed PIGEON his order ruling in favor of Company A on the subpoena issue discussed above:

>   *See information from [Company A]*

27.     On March 19, 2012, at 9:45 a.m., Michalek emailed PIGEON regarding the order and employment for Relative One:

>   *Steve..Hope you were able to open recent attachment..ie. Decision on [Person D] Subpoena!!Thank you again for the efforts on [relative One]'s behalf. Please keep me posted … John*

28.     PIGEON responded at 3:08 p.m.:

>   *Hey can John go to North Carolina or Florida fir the Presidents Campaign?*

29.     Michalek replied at 3:46 p.m.:

>   *Steve  Thank you so much for responding…Will check..Assuming .. a necessary detail ie When..ie presently..? Summer? Fall?He's a great traveler..ie been to China, Sri Lanka..Quatar..plus his Grandmother..ie [Relative Two]'s Mom has a place in Fla(Jupiter)..Big issue..he was seeking something that paid in DC..so he could stay there ..pay rent  etc..Absent that. ie.  something else….he' might be offered..an  unpaid  internship  in  Tel  Aviv.(told  you  he  travels)..6 weeks..summer..would have to sublet apt.UGH..!!.etc..I'm assuming the Obama thing doesn't pay( again ok..if other stuff..possible..John*

30.     PIGEON responded at 8:03 p.m.:

>   *Obama does pay. My close friend runs the southern region for campaign says he thinks he can get him a paid field job it would be till election*
>   *…*
>   *U can make great connections that can lead to DC job*

31.     Michalek responded the next morning, March 20, 2012, at 8:34 a.m.:

*Steve..Wow..and thank you wow!!When would it start? Would he need a car..???(he doesn't use one in DC..could get him one by summer..)Could he base out of his DC apt ie no subletting..or reside elsewhere..??? Guess as a parent should ask ball park what would pay???John*

32.    At 10:41 a.m., PIGEON responded:

*I need to get him in touch with [Person B] I don't have that level of detail*
*Can u send me another electronic copy of resume*
*[Person B] worked for [Person G] and I and now runs Southren region for Re elect He was Congressman [A] Chief of Staff and campaign manager for Atlanta Mayor [A] before going into lobbying where we hired him*

33.    At 10:50 a.m., Michalek sent PIGEON another copy of Relative One's resume:

*Here is another copy of [Relative One]'s resume.*

34.    At 11:01 a.m., Michalek emailed PIGEON again:

*Steve..Resume sent..make sure you can open...Sorry about all the Questions.. [Relative One] very interested!!! Tell me or him or us what to do next...John.*

35.    At 2:04 p.m., PIGEON sent Relative One's resume to Person B:

*This guys Dad is a prominent Judge Democrat and friend would like to get him campaign position*

36.    On March 26, 2012, at 9:15 a.m., Michalek emailed PIGEON:

*Steve...As you indicated..Apparently [Person B] called [Relative One]..Wed..left a message. Thank you so much!! .[Relative One] returned the call Thurs, and again Sat..leaving messages..He said will try again this PM...Judge John*

37.    On April 3, 2012, at 9:05 a.m., Michalek followed up with PIGEON:

*Steve,*
*Your friend had a phone conference with [Relative One] last Tuesday.  he advised [Relative One] he would receive a call from an Obama representative by Friday. If he didn't - he was to email your friend.  He emailed Friday and Today and*

*hasn't received a call.*
*John*

38.    PIGEON responded at 9:41 a.m.:

*I'll give him a call sometimes they get a little busy!*

39.    On April 10, 2012, at 9:32 a.m., Michalek emailed PIGEON:

*Steve..Hope you had a good Easter!!!Please see last note,,,ie April 3. [Relative One] hasn't heard anything more..from Obama Camp. or your contact!!! Any suggestions..or someone to contact.. John.*

40.    PIGEON responded at 11:04 a.m.:

*I'll find out*

41.    At 3:07 p.m, PIGEON emailed Person B:

*Need to start planning Kenya*
*They want to meet*
*Also can u help the Michalek kid ?*
*It's important to me*

42.    At 8:35 p.m., PIGEON emailed Michalek:

*Talked to [Person B] he's planning on hiring him next Month. But why don't u let him tell him that and just say to him he will be called soon*

43.    On April 18, 2012, at 7:50 a.m., PIGEON emailed Michalek regarding a meeting with Person B and employment for Relative One:

*Had dinner with [Person B] last nite in Chicago he told me [Relative One] is set and is slated to start in May and will probably be assigned to Central Florida. He also believes he has been told but will double check*

44.     Michalek responded:

> *Steve..Fantastic ,exciting news!!!Checked with [Relative One] this AM.. He
> hasn't heard yet...Will follow up.. Thank you so much..*

45.     On April 30, 2012, at 9:04 a.m., Michalek sent PIGEON an email that included

discussion of employment for Relative One:

> *Steve..So Sad about … Special person..a Precious (ie good guy) and Integral
> Part of the Political Landscape for so long (though not long enough)*
> *Wanted to keep you posted on [Relative One]..apparently in regular contact with
> [Person B]..That is..he advise [Relative One] to call every few days if he hasn't
> heard from the Obama People..and he has..Finally got a call from their Fla
> People fri..told won't have a spot there until mid June..is forwarding his resume
> to N Carolina to see if they have anything..!!! Let me ask you...this is something
> he really want to do( OBAMA THING).At the same time..this is his last week
> at Amer Univ ie exams this week...in his Graduate School format..ie
> International Relations..he has to do one International Internship..he's been
> offerred one in Israel..this summer..(6 credit hrs..doesn't pay..actually costs..ie
> parents.).anyway..he's thinking with these delays ie mid June..if he takes
> internship..right away..guess they will let him..(won't come home he's ok with
> that to make it work)..be done by late June. ?? KIds.!!!.would like to do
> both..What do you think!! John*

46.     Michalek followed up with another email at 11:30 a.m.:

> *Steve.....PS...You are not on the Receiver List..?? You may want to fix that..
> John*

47.     PIGEON responded at 2:09 p.m.:

> *How?*

48.     Michalek replied at 3:43 p.m.:

> *Steve..Its something through the State..You have to take  some course..Ie Can do
> online..Will get you some specifics. … Most times you hire a RE guy who collects
> the rents..until resolved than get a Fee..a percentage of the funds that were
> handled. In Commercial Part..get some interesting ones.. John.*

49.     PIGEON responded at 4:27 p.m.

*I have some partners who could be appointed that can help me*

50.     PIGEON sent another email at 6:08 p.m. addressing employment for Relative One:

*Have him do both. I'll makre sure [Person B] saves a spot*

51.     The following day, May 1, 2012, at 1:00 p.m. Michalek emailed PIGEON:

*Steve..If in the meantime..you wish for me to consider Receiverships for others in your office..Sure.. if it helps you..forward me some names..John*

52.     On May 2, at 4:02 p.m., Michalek forwarded Pigeon instructions on how to apply to be included on the receiver list.

53.     On May 8, at 11:15 a.m., Michalek emailed Pigeon regarding Relative One:

*Steve...Thanks again for the words of wisdom and continuing help..[Relative One] finishing school in the next few days..Leaving for Israel.in 10 days..(been hectic..Heh dad ..you can't believe how cheap the housing is in the Palestinian section..Kids..ugh...He'll be staying in dorm..Hebrew Univ..)..back in 8 weeks,,..Obviously wants  very much..to keep Obama Job alive..hasn't heard anything since last we talked ..advised he keep in touch with [Person B] until he hears something from Obama Camp???Any thoughts??*

54.     At 11:39 a.m. PIGEON responded:

*He should call [Person B] before he leaves.  I also will*

55.     At 1:13 p.m. Michalek replied:

*Steve.Thanks ..he will..and he will have his phone while there...John*

56.     Two days later, on May 10, 2012, at 8:56 a.m., Michalek emailed PIGEON about the receivership:

> *Steve ..Any suggestions for a Receiver..May have one coming up.. john*

57.     PIGEON responded at 11:38 a.m.:

> *[Person I]*

58.     PIGEON emailed again at 11:40 a.m.:

> *[Person J]. Is a real estate financier and Debeloper. Can they do it?*

59.     Michalek replied at 1:37 p.m.:

> *Steve..A Non Lawyer  Receiver.is possible ..usually a special case for a spec reason..ie once used a Forensic acct.but was for a Law Firm..(didn't turn out well)..And others for Nursing Homes..ie Need Special background...have to be on list.( yes ,even non lawyers).or if not I need to spell out a real good reason.. Will try [Person I]..Don't think on list..but lets see..*

60.     Michalek emailed PIGEON again at 1:39 p.m.:

> *Steve PS In most cases..where appropriate...1st thing smart lawyer does ...is get a RE Agent..to do detail stuff … John*

61.     Michalek emailed again at 1:41 p.m.:

> *Steve..Wait..did you say [Person J]..of [Company B]????*

62.     Michalek emailed again at 1:49 p.m.:

> *Steve..Have one..actually its a triple forclosure..One of the Attys..[Company D] out of Syr..asking for [Person J].(Very rarely do I accept their reccomendation..Receiver..my guy..my pick....so usually pretty forward to ask for a spec person for receiver from the Judge)BUT..if you'll get the credit..I'll consider..Let me know John*

63. PIGEON responded at 3:19 p.m.:

*Let me call him. I don't like [Company D] in the mix nasty firm*

64. PIGEON emailed again at 3:20 p.m.

*Let's get a lawyer maybe we can hire [Person J]. How about [Person A] he is my guy*

65. The following day, May 11, at 9:00 a.m., Michalek responded:

*Steve.. [Person A]..?? Not in Atty Directory? John*

66. At 10:12 a.m., PIGEON forwarded Michalek an email containing Person A's signature block.

67. At 10:18 a.m., Michalek replied:

*Great..Putting him in now..He'll get something in a few days..*

68. PIGEON responded at 1:56 p.m.:

*[Person A] I'll check we just put him as Atty at Water Authority previously worked in City Atty office*

69. On May 14, 2012, Michalek filed a form UCS-872 notice of appointment, with the New York Office of Court Administration, appointing Person A as a receiver. In the filing Michalek certified that he anticipated that the receivership would result in compensation of $15,000 or more.

70. On May 16, 2012, at 8:45 a.m., Michalek followed up:

*Steve..[Person A] should have paperwork..any day..[Relative One]..home ever so briefly..leaving for Israel in just a few days..Was hoping he would hear more from your contact before leaving???He'll have his cell over there..just updated his service..so he has use in and out..John*

71.     The following day, May 17, at 9:39 a.m., Michalek emailed PIGEON again:

*Unc Steve,,Oh by the way [Person A] wasn't on "The List"..But..we pushed it through anyway..have to give them a spec reason etc..will figure it out.. John*

72.     PIGEON responded at 11:00 p.m.:

*I'm sorry if it's a problem we can find another.  I'll call [Person B] again when us he leaving?*

73.     Michalek responded the following morning, May 18, at 8:21 a.m.:

*Steve..No  its OK [Person A] is OK...He should talk to someone who has done one ie usually smart thing to hire a RP Manager…Thanks so much again. John*

74.     On May 24, 2012, at 9:31 a.m. Michalek emailed PIGEON:

*Steve..Just lowered [Person A].... Bond by 70%..BUT an update..[Relative One] in Israel as of Sunday..BUT though I got him Int Service etc..IT HASN"T BEEN WORKING..Have been on phone with AT&T all morning trying to fix..In meantime..don't want him to miss any imp contacts from your connection to Obama..If necessary may need to pass messages through my home number,..716 XXX XXXX..  Thanks..John*

75.     Michalek followed up on May 30, at 9:44 a.m.:

*Steve..Assume [Person A] Receivership underway..Always hard to say..if lucrative and for how long..Imp he remembers..he's my Guy..the Courts Rep..if he has any problems..contact Court..let us run interference for him..sometime takes a bit..for folks to realize not nice to mess with Sup Ct Rep!!Still can't get [Relative One]'s cell to work..Been on phone with ATand T every day..Concerned he not miss calls from [Person B] or Obama people..Please suggest they call my home nu for now 716 XXX XXXX..John*

76.     PIGEON responded at 10:04 a.m.:

*Don't worry he's covered talked to [Person B] last nite
I'll let [Person A] know!*

16

77.    In June and July 2012, PIGEON and Michalek continued to email regularly about a job for Relative One.

78.    On June 27, 2012, Michalek signed and caused to be filed with the New York State Office of Court Administration a Form 872.5 that contained the false statement that Michalek "required the expertise" of [Person A] in order to justify the appointment of a "non-list" attorney to the receivership.

79.    On July 11, 2012, Michalek signed an order to show cause at the request of Person A relating to an expansion of Person A's powers as receiver.

80.    On July 23, 2012, at 11:50 a.m. Michalek emailed PIGEON:

*Steve..so we approved all 4 OTSC..for [Person A].....He's really going big time..wanted authority to hire..CPA...Property Manager..his own Atty if need be.. and a Golf Club Manager ???(Guess one of the parcels..is a Golf Course????Wonder if he has FREE golf shirts??))...If you have suggestions as to his hires..call him..Remember his fees based on percentage of funds he handles..The folks he hires paid by the Def...etc.not from his fee...He Thinks the Golf Course will be salvaged..the other parcels he thinks will be sold..not sure of rentals..... [Company A] I think is a Motion to compel [Person F] to produce stuff ...If it matters [Relative One] Grad pro has classes only on Tues Wd and Thurs.. John*

81.    PIGEON responded at 1:55 p.m.:

*I'm talking today to my guy.*
*What is bottom line on his time commitment*

82.    Michalek responded at 2:52 p.m.:

*Steve....So can [Person A] get golf passes fpr [Person L]??? Thanks for continued interest for [Relative One]....Basically...he's willing to go fulltime until end of August..Part time thereafter..John*

83.     PIGEON responded at 4:03 p.m.:

*Yes on passes.*
*I'll talk to them today*

84.     PIGEON emailed Michalek again at 11:55 p.m.:

*[Person B] is calling [Relative One] in the AM I think we have it worked out*

85.     On August 23, 2012, after numerous exchanges about Relative One and his job

prospects, Michalek emailed PIGEON regarding [Person A]:

*Unc Steve..As to your acquaitance [Person A].. His Receivership.. 3 properties including Arrowhead Golf Course in Clarence..(ie you might seek free passes perhaps for a [Person L])is doing fine..JUst approved his retention of his own Counsel..which is perfectly fine..Its a [Company C] (formerly White..don't know if you know) from the Knoer Group..Has control of Golf Course..actually already produced revenue of 167000$..Guess folks at Course thrilled..been told Best shape in years ie Bills being paid..chemicals,suppliers..etc..no one laid off etc..plus still a substantial profit..Other properties also producing revenue of about $20000 per month..PS Nothing to report from [Relative One].. John*

86.     PIGEON responded:

*The state director told me he has e mailed him and left phone message. Please tell him to check*

87.     On August 27, 2012, Michalek responded to PIGEON:

*Steve..Apparently [Relative One] and State?DC Director exchanging e mails and Phone messages..will keep you posted,,*

88.     On or about September 4, Relative One started in the D.C. office of the

2012 reelection campaign for President Barack Obama, as a result of PIGEON's

efforts.  On September 4, Michalek emailed PIGEON the following regarding the job

and the case pending before Michalek involving Company A:

> *Steve..Sorry didn't get your message until too late...[Relative Two] had me*
> *running about anyway..Kids home for the weekend..Apparently [Relative One]*
> *working for Obama ..starting today..ie think 5 hrs... today...then so far 3 times*
> *this week..Not sure what he 's doing..I'm sure he'll let me know...My Conf Law*
> *Clerk reports [Person M] has been a bit of a jerk at the pre trials which is saying*
> *something at a conf where Mr Inflexible.[Person N] is present..*

89.     PIGEON responded the same day:

> *He is a jerk but he is Right!*
> *> [Person N] bully!*
> *> I think we have [Relative One] covered finally!!*
> *> Hope [Relative Two] keeps quietly getting people  to pull [Person E's] lever!*

90.     On September 6, 2012, Michalek emailed PIGEON regarding Relative

One's job and the pending case involving Company A:

> *Steve...Again [Relative One] doing 3 days this week.(5hrs or so per..right*
> *now).Said 1st day started with him fixing the offices computer system (appears*
> *..he says some middle aged folks..heh..probably younger than us..were at wits*
> *end with some computer issues) … but fortunately he knew enough to fix the*
> *situation.. and for the rest of the time..made lots of phone calls.. he thinks things*
> *were slow because of Convention..Question..How will this be '*
> *Covered"??Expecting a [Company A] OTSC today from [Person M].. Will keep*
> *you posted..*

91.     PIGEON responded:

> *Let's talk today I am in Charlotte but available on my cell*

92.    Michalek replied:

*Steve..Tried to call...Not suprisingly your message center..ALL FILLED UP....*
*Decision on oTSC tomorrow..think you'll be OK with it... Is it raining?? Pres*
*Clinton..impressive.. John*

93.    PIGEON responded:

*What's your direct number*
*I'm at lunch with Gen [A] and Gov [A].  Will call  soon*

94.    On November 20, 2012, Michalek emailed PIGEON about the

receivership and post-graduate employment for Relative One:

*Steve...Your young Lawyer..Assoc..still has his Receivership going.. My big task*
*is getting [Relative One] a job when he graduates with His Masters from*
*American Univ in May...Taking Foreign Service Exam in Jan.Heh you looked*
*good with Gen [A]!!.. Off to Long Island ie [Relative Two]'s Family for*
*Thanksgiving..John*

95.    PIGEON responded the same day:

*Great.  Have a good thanksgiving*
*Let's grab coffee when u get back*
*On all those items*

96.    On December 10, 2012, Michalek emailed PIGEON regarding a vacancy in

the appellate division:

*Steve . a question and or request..Think their is a seat open in App Div..I*
*applied.. ie [Person O's] seat.. Normally I wouldn't mention it to you..ie I would*
*expect you would help [Person L]?? ... If [Person L] not interested..wonder if you*
*could help.. Have my interview next Mon???*

97.     PIGEON responded, including the following:

*If [Person L] out. U r my man*
*…*
*>*
*I better sit on him*
*I'm in Bucharest till 17th*
*But can talk*
*I will start talking u up*

98.     On January 8, 2013, Michalek emailed PIGEON, in part regarding his application for an appointment to the appellate division and a meeting that PIGEON had with the Governor of New York.  The email included the following:

*Unc Steve… How'd you do with the Gov????*

99.     PIGEON responded the same day, and wrote, in pertinent part:

*In Albany now… Gov went well … Talked u up*

100.    On January 28, 2013, Michalek emailed PIGEON, including the following request for further assistance regarding employment for Relative One:

*[Relative One] taking Foreign Serv Exam in about 10 days..If you Pass their's another Step.If you don't ..Can't redo for 10 months etc.. Anyway he remarked.his impression.",passing" often depends on having someone watching out for you inside..He stressed getting a Job at State is all in knowing 'someone"..Soo..don't suppose you might know any someones..over at State??John*

101.    PIGEON responded the same day, in pertinent part:

*Know alotof people*
*I'll get on it*
*Does he have copies of what he has filed?*

102.    On January 29, 2013, Michalek responded to PIGEON:

*Steve..Hope your Mom OK...Copies..of what [Relative One] files for For Ser exam or App To Dos???I'll check!!!About [Relative Two] and Tn Bd..a little tease..ie [Person K] thought you were the one pushing the idea???Not that its a bad thought??On [Person A] Receivrship..still rolling along.. I was a little concerned he has'nt paid himself anything..yet.. I will protect his interests..but always a bit harder with a big lump at end../ / John*

103.　　On January 30, 2013, Michalek emailed PIGEON a copy of Relative One's foreign service exam and application.

104.　　On February 1, 2013, PIGEON responded:

*This didn't come through*
*Would u and [Relative Two] or you and whoever like to be my guests in box*
*At the hockey game Sunday*

105.　　On February 3, 2013, Michalek and Relative Two attended the game at PIGEON's invitation and at no cost to them.

106.　　On February 4, Michalek granted a motion for an order to show cause approving a payment to Person A under the receivership for $2,118.60.

107.　　On February 20, 2013, at 10:40 a.m., Michalek emailed PIGEON:

*Steve... Anything on DOS or Foreign Service???[Person A] Receivership should rap up ie he gets paid by March...Haven' t heard a peep about the Appp Div.. John*

108.　　PIGEON responded at 3:20 p.m.:

*I'll be inDC next week and I was going to check on in*
*[Person A] will be going thru tough time*
*Receivership ending and probably canned at Authority …*

109.    Michalek replied at 3:34 p.m.:

> Steve..FS exam results I'm told out in next week or two . . .
> . . .
> [Person A] good man..will get him more things..See if he's on list for Ct Evaluators ie
> Conservatorships etc..John

110.    On March 4, 2013, Michalek granted a motion for an order to show cause approving a payment of $36,571.85 to Person A under the receivership.

111.    On March 6, 2013, Michalek granted a motion for an order to show cause approving a payment of $741.62 to Person A under the receivership.

112.    On March 11, 2013, at 3:58 p.m., Michalek emailed PIGEON:

> Steve.. Protecting [Person A] Receiver Fee..The Old "Just sign the Order Your Honor
> dissolving the Receivership.. and we assure he'll be paid" Gambit … Always a big NO
> Thank YOU...Receiver is my guy and must be Paid first before anything else is
> done.Lawyers mean well but their clients have short memories about financial
> obligations once the danger has passed..Also his Counsel getting 6500$...Heh.. [Relative
> One] finishes next step in Foreign Service thing..some narrative essays..on 20th..(think
> part of background thing..)He graduates in May..so I'm looking for some traction some
> place..nervous parent thing  ie he makes noises if nothing about. ie job...he's being
> romanced by Naval Intelligence..

113.    PIGEON responded at 5:51 p.m.:

> Great do u and [Relative Two] want to come to game tomorrow(Tuesday) against
> Rangers we can catch up

114.    On or about March 11, 2013, PIGEON communicated with Person A by text message and directed him to pay PIGEON a "finder's fee," for arranging the receivership. On March 12, 2013, Person A wrote a $5,000 check to one of Pigeon's LLCs, Landen & Associates.

115.    On March 12, 2013, Michalek and Relative Two attended the hockey game at PIGEON's invitation and at no cost to them.

116.    On April 3, 2013, Michalek granted a motion for an order to show cause approving a payment of $208.82 to Person A under the receivership.

**All in violation of Title 18, United States Code, Section 371.**

## COUNTS 2-4

**(Honest Services Wire Fraud)**

**The Grand Jury Further Charges That:**

1.    The General Allegations and the allegations of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.    From in or about February 2012 through in or about April 2013, in the Western District of New York, and elsewhere, the defendant, G. STEVEN PIGEON ("PIGEON") and John A. Michalek ("Michalek"), aided and abetted by each other, devised, and intended to devise, a scheme and artifice to defraud and deprive New York State and its citizens of

their intangible right to the honest services of John A. Michalek, a New York State Supreme Court Justice, through bribery.

3.     On or about the dates listed below, in the Western District of New York, and elsewhere, for the purpose of executing the scheme and artifice to defraud described above, and to deprive New York State and its citizens of their intangible right to the honest services of Michalek through bribery, PIGEON knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signs, and signals:

| Count | Date | Description |
|---|---|---|
| 2 | Dec. 10, 2012 | Email from PIGEON to Michalek |
| 3 | Jan. 28, 2013 | Email from PIGEON to Michalek |
| 4 | Feb. 20, 2013 | Email from PIGEON to Michalek |

**All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.**

## COUNT 5

**(Federal Programs Bribery)**

**The Grand Jury Further Charges That:**

1.     The General Allegations and the allegations of Counts 1 through 4 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or about November 2012 and continuing until in or about April 2013, in the Western District of New York, and elsewhere, the defendant, G. STEVEN PIGEON,

did knowingly and corruptly give, offer, and agree to give something of value to another person intending to influence and reward John A. Michalek, a New York Supreme Court Justice and agent for the New York State government, in connection with a business, transaction, and series of transactions of the State of New York that involved $5,000 or more, that is, payments for a New York Supreme Court receivership, and during each of calendar years 2012 and 2013, New York State received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance.

**All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.**

## COUNTS 6-8

**(Travel Act)**

**The Grand Jury Further Charges That:**

1.      The General Allegations and the allegations of Counts 1 through 5 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or about February 2012 through in or about March 2013, in the Western District of New York, and elsewhere, the defendant, G. STEVEN PIGEON ("PIGEON"), did use a facility in interstate commerce, as set forth below, with intent to

promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, specifically, Bribery as alleged in Count Five of this Indictment, and Bribery in the Third Degree in violation of the New York State Penal Law by conferring, and offering and agreeing to confer, any benefit upon John A. Michalek ("Michalek") upon an agreement and understanding that Michalek's judicial opinion, judgment, action, and decision as a public servant would thereby be influenced, and thereafter performed and attempted to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity:

| Count | Date | Description |
|-------|------|-------------|
| 6 | Dec. 10, 2012 | Email from PIGEON to Michalek |
| 7 | Jan. 28, 2013 | Email from PIGEON to Michalek |
| 8 | Feb. 20, 2013 | Email from PIGEON to Michalek |

**All in violation of Title 18, United States Code, Sections 1952 and 2.**

DATED:  Buffalo, New York, October 5, 2017

JAMES P. KENNEDY, JR.
Acting United States Attorney


BY:    S/PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5873
Paul.Bonanno@usdoj.gov


ANNALOU TIROL
Acting Chief


BY:    S/JOHN D. KELLER
Deputy Chief
U.S. Department of Justice
Public Integrity Section
1400 New York Ave. NW, 12th Floor
Washington, DC 20005
202-598-2231
John.Keller2@usdoj.gov


A TRUE BILL:


S/FOREPERSON