IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
OCT 0 9 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

---

UNITED STATES OF AMERICA,

v.                                                    17-CR-190-A

G. STEVEN PIGEON,

                    Defendant.

---

## SUPERSEDING INFORMATION
(Title 18, United States Code, Section 371)

## COUNT 1

### The United States Attorney Charges That:

1.      From on or about January 31, 2014, until in or about December 2014, in the Western District of New York, and elsewhere, the defendant, G. STEVEN PIGEON, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with Person A, a foreign national, a person known to the United States Attorney, and others, willfully to cause a donation of $25,000 or more to be made, directly and indirectly, from a foreign national to the campaign of Public Official A, a person known to the United States Attorney, in connection with a state election, in violation of Title 52, United States Code, Sections 30121 and 30109(d)(1)(A)(i).

### Purposes of the Conspiracy

2.      It was a purpose of the conspiracy for PIGEON to enrich himself by facilitating Person A's donation to Public Official A's campaign in order to generate more business from Person A.

3.    It was also a purpose of the conspiracy for Person A to seek to influence Public Official A to support legislation that would benefit Company A by allowing it to expand its online gambling business.

### The Manner and Means

4.    The conspiracy was carried out through the following manner and means, among others:

    a.    PIGEON and Person A agreed for Person A to donate to Public Official A's campaign knowing that it was illegal for a foreign national to donate to a campaign for elected office in the United States. PIGEON passed on details from the campaign to Person A to facilitate Person A's donation. When Person A's initial payments to the campaign were rejected, PIGEON advised Person A of alternative methods to make the donation. Person A and PIGEON eventually agreed to use Person B, a person known to the United States Attorney, to make the donation on Person A's behalf. Person A agreed to reimburse Person B to ensure that the donation was made.

    b.    PIGEON and Person A discussed the donation over the telephone and in text messages and e-mails.

### Overt Acts

5.    In furtherance of the conspiracy, and to effect its objects and purposes, defendant PIGEON and others committed the following overt acts, among others, in the Western District of New York, and elsewhere:

6.     On January 31, 2014, PIGEON forwarded Person A an invitation to an upcoming, February 26, 2014, campaign event for Public Official A at a cost of $25,000 per couple. Person A agreed to donate $25,000 for the event. On February 1, 2014, PIGEON e-mailed the finance director and managing director of the campaign and stated:

> *Please put me down for 25 . . .*
> *The 25 is different client from Montreal but has American company in Long Island.*

7.     On February 5, 2014, Person A texted PIGEON:

> *Send me info for feb 26 dinner, need details where I wire etc.*

8.     On February 11, 2014, PIGEON emailed the finance director and stated:

> *Need wiring info*

9.     After receiving the wiring detail from the finance director of the campaign, PIGEON forwarded the information to Person A and wrote:

> *[Person A] here is the wiring info*
> *Please let me know when it goes out*
> *Event two weeks from tomorrow 26th of this month*

10.     Person A responded:

> *Sounds good is it +1? Want to know if I bring [Person C]?*

11.     PIGEON replied:

> *Me and u. But I can push if need be*

12.     On February 12, 2014, Person A forwarded the e-mail with the wiring instructions to his executive assistant and the chief financial officer at Company A:

> *[Person D] pls see email below and make sure it is in my calendar to be in NYC.*
> *As well [Person C], I will be making a donation ;) of 25k USD.*

13.     On February 13, 2014, after receiving an inquiry from the managing director of the campaign about the status of the donation from Company A, PIGEON forwarded the inquiry to Person A and stated:

> *Let me know when you do it.*

14.     The same day, Person A had a $25,000 wire sent to the campaign from Company A.

15.     Person A then responded to PIGEON and copied his chief financial officer:

> *[Person C], pls send a copy of the wire conf of 25k to Steve.*

16.     PIGEON replied:

> *The money should not go to me*
> *It needs to be wired to [Public Official A's] campaign*
> *Let's discuss*

17.     Person A responded:

> *It is. It is being sent to the wire info you sent for the campaign*

18.    During his e-mail exchange with Person A, PIGEON received an e-mail from the managing director of the campaign informing him that the wire from Person A had been sent from a corporation and thus, the campaign could not accept it. PIGEON e-mailed Person A:

> *Oh. Just sent u the email*
> *Can't be corporate must be LLC*
> *Or personal under state law*
> *I told him I would get hold of u*

19.    The following day, February 14, 2014, Person A emailed PIGEON stating:

> *Steve, I sent the wire personally this time.*

20.    Person A then forwarded the initial campaign invitation to Person B and stated:

> *Lets discuss I need to you to send 25usd*

21.    Person B responded:

> *Of course. Need me to attend?*

22.    The same day, PIGEON received an e-mail from the managing director of the campaign inquiring as to whether Person A was an American citizen. PIGEON e-mailed Person A and stated:

> *Needs to be American citizen or American partnership or LLC*

23.    Person A responded:

> *Wow! So now I've wired twice and it will be returned? Ok*

5

24.     PIGEON replied:

*Sorry should have told u Thought u knew must be citizen to give.*


25.     Person A then called PIGEON.


26.     PIGEON and Person A agreed that Person A would make the donation to Public Official A's campaign through Person B. PIGEON knew and understood that Person A would pay for, or reimburse, the donation.


27.     PIGEON then e-mailed the managing director of the campaign in response to the question regarding Person A's citizenship:

*No. They do have a guy at Cadillac Jack who is perm resident and donates yearly*
*Based in Atlanta*


28.     PIGEON followed up with another e-mail to the managing director:

*Sorry. I told him but he didn't recall that he can't do personal*
*Just a few months ago for stuff I was doing for D Trip*


29.     The managing director responded:

*Let's talk this weekend*


30.     On February 16, 2014, PIGEON exchanged seven text messages with, and placed one call to, a number registered to Public Official A's campaign.

31.     On February 17, 2014, Person A e-mailed PIGEON:

*Did you confirm if a permanent resident is fine?*


32.     On February 21, 2014, Person A e-mailed Person B regarding the $25,000 donation:

*[Person B] pls wire 25k as contribution to [Public Official A's] campaign.*


33.     Person B responded that he needed the wiring instructions and Person A replied and copied the chief financial officer of Company A:

*I thought I sent it before. [Person C] pls ask [Person E] to send it to [Person B]*


34.     On February 23, 2014, Person A again e-mailed Person B regarding the donation:

*Did u wire the 25k?*


35.     The following morning, February 24, 2014, Person B responded confirming that he had wired the $25,000 to the campaign that morning. Person A forwarded the confirmation e-mail to PIGEON, stating:

*Fyi on below.*


36.     Prior to sending the wire, Person B had discussed reimbursement for the donation with Person A. On February 24, 2014, Person B submitted a request for reimbursement for the $25,000 donation to Company A.

37.     On February 26, 2014, Person A and PIGEON attended the campaign event held by Public Official A based on the donation that they had orchestrated through Person B.

38.     On February 28, 2014, after consulting with an attorney, Person B withdrew his request for reimbursement for the $25,000 donation.

39.     On or about December 11, 2014, Person A directed that the $25,000 reimbursement be included in Person B's end-of-year bonus. On December 11, Person B received his end-of-year bonus from Company A via wire. The wire included the $25,000 reimbursement. Person B refused the reimbursement and Company A rescinded the original wire and wired a reduced amount to Person B's account.

**All in violation of Title 18, United States Code, Section 371.**

Dated:  Buffalo, New York, October 9, 2018.

JAMES P. KENNEDY, JR.
United States Attorney

PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
138 Delaware Avenue
Buffalo, New York 14202
716-843-5973
Paul.Bonanno@usdoj.gov

ANNALOU TIROL
Acting Chief

JOHN D. KELLER
Deputy Chief
United States Department of Justice
Public Integrity Section
1400 New York Ave. NW, Ste. 12000
Washington, DC 20005
John. Kelly@usdoj.gov