UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

       *Plaintiff,*

   v.            Case Number: 17-CR-190-A

G. STEVEN PIGEON,

       *Defendant.*
_____

## DEFENDANT G. STEVEN PIGEON'S SENTENCING MEMORANDUM AND LETTERS IN AID OF SENTENCING

DATED:  Buffalo, New York
      July 13, 2022    Respectfully submitted,

                JUSTIN D. GINTER, ESQ.
                PAUL J. CAMBRIA JR., ESQ.
                LIPSITZ GREEN SCIME CAMBRIA LLP
                Attorneys for Defendant
                G. STEVEN PIGEON
                Office and Post Office Address
                42 Delaware Avenue – Suite 120
                Buffalo, New York 14202
                (716) 849-1333
                jginter@lglaw.com
                pcambria@lglaw.com

TO:  PAUL E. BONANNO
    ASSISTANT UNITED STATES ATTORNEY
    United States Attorney's Office
    138 Delaware Avenue
    Buffalo, New York 14202
    (716) 843-5973
    Paul.Bonanno@usdoj.gov

    JOHN D. KELLER
    PRINCIPAL DEPUTY CHIEF
    United States Department of Justice
    Public Integrity Section
    1400 New York Ave. NW, Ste. 1200
    Washington, DC 20005
    John.Keller@usdoj.gov

## PRELIMINARY STATEMENT

On October 9, 2018, G. Steven Pigeon (Steve Pigeon) pled guilty before the Honorable Richard J. Arcara, Senior United States District Judge, to a one count information charging him with Conspiracy to Cause a Donation of $25,000 or More to be Made by a Foreign National to a Campaign in Connection with a State Election, in violation of 52 U.S.C. § 30121 and 52 U.S.C. § 30101(d)(1)(A)(i), all in violation of 18 U.S.C. § 371. Mr. Pigeon admitted that the amount in question was $25,000, which is the minimum amount required to charge the offense.

A Plea Agreement was entered into between the government and the defense. The Plea Agreement set out that Mr. Pigeon's base offense level is 8. Mr. Pigeon received a 4 level increase due to the fact that the value of the transaction exceeded $6,500 and a 2 level increase because the transaction involved a foreign national. Mr. Pigeon then received a 2 level decrease pursuant to U.S.S.G. § 3E1.1(a) for his timely acceptance of responsibility. His total adjusted offense level was 12 with a criminal history score of I, resulting in a Guideline imprisonment range of 10 months to 16 months together with a fine range and a period of supervised release of 1 to 3 years.

This memorandum is respectfully submitted on Mr. Pigeon's behalf in an effort to provide the Court with an accurate depiction of his character and circumstances before the Court makes the important decision regarding his sentencing and his future. Mr. Pigeon respectfully requests that the Court impose a fair and reasonable sentence which is sufficient, but not greater than necessary.

## MR. PIGEON'S OFFENSE OF CONVICTION

The Court is respectfully directed to the Presentence Report (PSR) as it describes the general background underlying the instant offense. This memorandum will expand only upon

those facts necessary to fully understand Mr. Pigeon's personal history, conduct, and lifelong commitment to public service.

### STATE CHARGES – BRIBERY IN THE 3RD DEGREE

In state court, Mr. Pigeon pled guilty to Bribery in the 3rd degree on September 28, 2018. The court awaits Mr. Pigeon's sentencing in the present matter to determine his sentence for the state charges. It is important to note that the court placed a cap on the sentence for the bribery offense at "no more than a local year".

### PENDING ALLEGATIONS

In another state court action, Mr. Pigeon is being accused of Sexual Assault against a Child, Rape, Criminal Sexual Act in the 1st Degree, Sexual Abuse in the 1st Degree, and Endangering the Welfare of a Child. Mr. Pigeon vehemently denies these outrageous allegations and is looking forward to clearing his name against such allegations. Motions were filed regarding this matter on July 1, 2022, and oral argument is scheduled for August 12, 2022. Mr. Pigeon eagerly anticipates the day that he can deny the implausible allegations against him publicly before the court.

### MR. PIGEON'S PERSONAL HISTORY

Mr. Pigeon was born in St. Louis, Missouri and lived there until he was 5 years old. His family moved to Illinois and ultimately ended up in Buffalo in 1972. Mr. Pigeon didn't have the easiest childhood but would be the first to tell you that any hardships helped make him into a better man. Growing up, his father suffered from bipolar disorder and abused alcohol for years, masking his mental illness. These diseases caused rifts in Mr. Pigeon's Catholic-focused family. Mr. Pigeon's mother, Barbara Pigeon, would travel to Missouri with her children to seek refuge when

Mr. Pigeon's father experienced manic episodes. Life grew even harder for the Pigeon family when Mr. Pigeon's father was hit by a car and killed outside of their family home in 2005.

Mr. Pigeon has two sisters, Michelle Giambrone and Renee Sills. Michelle is a Jehovah's Witness and has infrequent contact with her family. Renee suffered a traumatic event that Mr. Pigeon believes compromised her mental and emotional health. Even though Mr. Pigeon does not have close relationships with his sisters, he still has selflessly helped them both financially throughout the years. Mr. Pigeon's strongest family relationship is with his aunt, Rita Gralike. Mrs. Gralike advised that Mr. Pigeon's father was physically abusive. She recalled an incident where Mr. Pigeon's father struck him in the face, breaking his glasses. This was not a one-time occurrence. Mrs. Gralike further advised that it was her late husband, Donald Gralike, who encouraged Mr. Pigeon to pursue a career in law and helped with educational expenses. Mr. Gralike fostered a caring relationship with his nephew, and Mr. Pigeon has always been grateful for this familial support.

Mr. Pigeon's aunt has described him as being a "people pleaser" as a reaction to the rejection he felt form his father growing up. Throughout his entire professional career, Mr. Pigeon has worked tirelessly to ensure that he is helping the people he is working with. It is this quality in Mr. Pigeon that allowed him to become so successful in the world of politics.

## MR. PIGEON'S POLITICAL CAREER

After high school, Mr. Pigeon went on to obtain a Bachelor of Arts in political science from the University at Buffalo. In 1983 he graduated with a Juris Doctor from the same and passed the New York State bar exam the following year. After law school, Mr. Pigeon started what would become a long and successful career as a public servant. In the 1980s and 1990s, Mr. Pigeon

worked on several presidential campaigns. Mr. Pigeon served as a major fundraiser volunteer for Barack Obama's campaign in 2012 and Hilary Clinton's campaign in 2008. In the Western New York area, Mr. Pigeon was a political consultant, former elected official, and former Chairman of the Erie County Democratic Committee. His political career is extensive, which enabled Mr. Pigeon to become the well-connected and highly influential political operative he was prior to the instant offense.

From 1987 through 2015, Mr. Pigeon worked full time and of counsel at various law firms in the Buffalo area, including Underberg and Kessler; Davis, Augello, Matteliano & Gersten, LLP; Damon & Morey; and Nixon Peabody. In addition to working of counsel to various law firms, Mr. Pigeon also served as Counsel to the New York State Senate Democratic Minority Leader from 1996 to 2005, as well as Counsel for the Majority Leader from 2010 to 2012. Mr. Pigeon also owned and operated GSDP Consulting, LLC from 2003 until 2010. This company was bought out in 2010 by Gary Parenti, a friend of Mr. Pigeon's.

Unfortunately, due to his guilty plea, Mr. Pigeon is no longer licensed to practice law. Mr. Pigeon's entire career and his future have both been shattered as a result of his poor choices. This public servant has lost nearly everything. His career, connections, and financial state have all been negatively affected due to his lapse in judgment. Although Mr. Pigeon has made poor, selfish choices that put him in this position, his career and years of public service reflect his true character and commitment to helping the community he serves. Neither society, nor those close to Mr. Pigeon, will benefit from a term of incarceration for what was a poor decision.

## LETTERS IN AID OF SENTENCING

Attached hereto are letters counsel has received on Mr. Pigeon's behalf. The letters are intended to advise the Court of Mr. Pigeon's true, giving character. As the Court will see, there are several friends and colleagues that can attest to the hardworking and selfless individual that is Steve Pigeon.

## MR. PIGEON'S ACCEPTANCE OF RESPONSIBILITY

Paragraph 52 of the presentence report indicates that Mr. Pigeon has fully accepted responsibility for his crime of conviction. Paragraph 52 of the presentence report indicates Mr. Pigeon's personal statements to the probation officer:

> I made a poor decision in committing this crime. I was aware that the client was not a United States citizen and went forward with complete disregard. My conduct has destroyed my legal and political career. I was desperate to obtain the donation. The individual was a top democratic donor and did not want to lose that position. I regret my actions.

What is clear is that Mr. Pigeon is a very proud man and will have to live with decisions he made for the rest of his life. These actions affect not only Mr. Pigeon, but his entire circle of friends.

Mr. Pigeon's friends and colleagues, outlined the remorse that they have seen from their friend in a character letter provided by B. Thomas Golisano, he stated.

> I first met Steve in 1994. He is a highly intelligent, warm-hearted, and generous man…The significant effort he has put into making up for the bad decisions in the past, has not gone unnoticed by myself and the people he has helped along the way. I am proud to call him my friend.

Mr. Pigeon is genuinely sorry for the offenses he has committed. He regrets the actions that led to his crime of conviction and now hopes he rebuild the life he once had. Mr. Pigeon is a firm believer that our greatest purpose and sense of clarity is often produced from our greatest pain. Mr. Pigeon is truly passionate about accepting his fate head-on and coming out stronger on the other side.

## MR. PIGEON'S REQUEST FOR SENTENCE

As indicated above, Mr. Pigeon has shown remorse for his criminal act. He fully understands that what he did is not a victimless crime. It is doubtful that he will ever forget the damage that his actions have caused his friends, and career. We are not asking the Court to overlook what Mr. Pigeon did. However, we ask the Court to see the person who is described by everyone he comes into contact with as kind, selfless and hardworking. As the courts have recognized:

> It has been uniformly constant in the federal judicial system for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Coon v. United States*, 518 US 81, 113 (1996). Underlining this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 US 241, 247 (Pennsylvania, ex. Rel. *Sullivan v. Hase*, 302 US 51, 55 (1937). ("for the determination of sentences justice generally requires consideration of more than the particular acts by which the crime was committed and there be taken into account the circumstances of the offense together with the character and propensities of the offender"). *Heper v. United States*, 562 US 476 (2011).

As is always the case, 18 USC §3553(a)(2) requires that any sentence imposed should reflect the seriousness of the offense: "to promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from crimes of the defendant; provide the defendant with needed education or vocational training medical care or

7

other correctional treatment in the most effective manner." However, the courts have also held that the likelihood that a defendant will "engage in future criminal conduct [is] a central factor that a district court must assess and impose [a] sentence." *Pepper v. United States, supra* at 492. And as well, the sentencing statute requires that a sentence should be "sufficient but not greater than necessary," to meet the ends of justice and the mandates of §3553(a).

A sentence of probation is still a serious sentence. As the Supreme Court has noted:

> We recognize that custodial sentences are qualitatively more severe than probation or a sentence of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not lead the judicial district, move, or change jobs without notifying, and in some cases, receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony and refrain from excessive drinking. Most probationers are also subject to individual "specialized conditions" imposed by the Court. *Gall v. United States*, 552 US 38, 48-49 (2007).

It should be noted, that Mr. Pigeon will have been under pretrial supervision for over 5 years at the time he is sentenced.  Mr. Pigeon has been fully compliant with the terms and conditions of his release during that time.

By this sentencing memorandum, counsel is not requesting that the Court, in any way, excuse Mr. Pigeon's poor choices. He understands that his criminal conduct has hurt many people. To that extent, as he indicates, he is not the only one who has been affected by his conduct.  He knows that the community and his friends have been adversely affected by what he chose to do.

## CONCLUSION

Mr. Pigeon understands that there are no excuses for his actions. He has tarnished what, up until this point, has been a long successful career in both law and politics. Mr. Pigeon has made several connections throughout his time in the public eye. Several of these connections he has lost due to this offense. However, many have stayed by his side and have even written letters to this Court. Mr. Pigeon's friends and family know his character better than anyone. He is a selfless person who has always tried his best to please everyone. It was this quality that led Mr. Pigeon to commit the instant offense.

Steve Pigeon is a well-liked and respected figure in the Buffalo area. It is not always the case that so many people have such good things to say about a career politician. This shows how genuine and loyal to his work Mr. Pigeon truly is. Mr. Pigeon has made poor decisions and in no way is counsel trying to diminish the significance of his conduct. These are choices that he will be forever remorseful and ashamed of.  We ask the Court to consider his lifelong commitment to public service as well as the man he truly is. It is therefore respectfully requested that the Court sentence Mr. Pigeon accordingly.


DATED:      Buffalo, New York
            July 13, 2022

                                            Respectfully submitted,


                                            /s/Justin D. Ginter
                                            JUSTIN D. GINTER, ESQ.
                                            LIPSITZ GREEN SCIME CAMBRIA LLP
                                            *Attorneys for Defendant, G. STEVEN PIGEON*
                                            42 Delaware Avenue, Suite 120
                                            Buffalo, New York 14202
                                            (716) 849-1333